WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Luis Enrique Ortega,<br><br>            Petitioner,<br><br>v.<br><br>Charles Ryan, et al.,<br><br>            Respondents. | No. CV-14-00356-TUC-EJM<br><br>**ORDER** |

Petitioner Luis Enrique Ortega filed a pro se Petition for a Writ of Habeas Corpus ("PWHC") pursuant to 28 U.S.C. § 2254 on November 29, 2013.[1] (Doc. 1). Petitioner raises four grounds for relief: (1) double jeopardy; (2) ineffective assistance of trial counsel; (3) ineffective assistance of Rule 32 counsel; and (4) due process and equal protection violations. Respondents filed an Answer contending that the PWHC is untimely, and further that all of Petitioner's claims are procedurally defaulted or otherwise not cognizable on habeas review. The Court concludes that Petitioner's PWHC is untimely, and that Petitioner has not shown that he is entitled to equitable tolling. Accordingly, the petition will be denied.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

   **A. Trial, Sentencing, and Appeal**

On November 5, 2007, a Pima County Superior Court jury found Petitioner guilty

---

[1] Although the Petition was docketed by the Clerk on January 10, 2014, the Court assumes that Petitioner deposited his PWHC in the prison mailing system on November 29, 2013, as indicated by Petitioner's signature on his Petition. (Doc. 1 at 11).

of two counts of sexual abuse of a minor under 15, two counts of molestation of a child, two counts of sexual conduct with a minor under 15, and two counts of threatening or intimidating. (Doc. 9 Ex. C). Petitioner was sentenced to a combination of concurrent and consecutive presumptive prison terms for a total of 57 years. (Doc. 9 Ex. D).

The Arizona Court of Appeals ("COA") summarized the facts of the case as follows:

> On August 20, 2006, thirteen-year old C.Q. was visiting her mother in Tucson. That morning she was sleeping on a couch, when she was awakened by Ortega touching her arms, buttocks, and legs and trying to turn her over. She asked Ortega what he was doing, and although he stopped touching her, he did not answer. A few days later, on August 25, while C.Q. was sleeping, Ortega turned her "face up" and began touching her breasts and vagina over her clothes. Afterwards, Ortega told her not to tell anyone what happened. C.Q. returned home to Mexico the following day.
>
> C.Q. next visited her mother in December 2006. On the 22nd or 23rd, Ortega took C.Q. to an abandoned trailer where he forcibly removed her clothes, touched her breasts, back, and legs, and had sexual intercourse with her. She did not tell her mother what had happened because Ortega had told both her and her brother F.Q. that he would either kill their mother or hurt them if they said anything.
>
> On subsequent visits in February and March or April of 2007, Ortega engaged in similar acts with C.Q. and each time he threatened to harm her mother if C.Q. told her what he had done. On April 9, C.Q.'s mother was lying on the couch when she saw Ortega touch C.Q.'s buttocks over her pajamas. Shortly thereafter, she heard him walk into C.Q.'s bedroom. She screamed at him, and the two argued about what she had seen. When the mother called the police, Ortega put his clothes in his car and left the house.

(Doc. 9 Ex. J).

Following his conviction, Petitioner sought review in the Arizona COA. Appointed counsel filed an opening brief raising two issues on appeal: (1) multiplicitous indictment/double jeopardy, arguing that counts three and four are lesser included offenses of count five, and (2) that the state exerted improper influence over F.Q.'s testimony, making his testimony unreliable. (Doc. 9 Ex. E). Petitioner later withdrew his argument that count three was a lesser included offense of count five, but continued to

argue that counts four and five were multiplicitous. (Doc. 9 Exs. G, H). On October 14, 2008, the COA issued its decision vacating Petitioner's conviction and sentence on count four of the indictment, and affirming Petitioner's conviction and sentence on the remaining counts. (Doc. 9 Ex. J).

### B. First Petition for Post-Conviction Relief

On May 8, 2009, Petitioner initiated proceedings in Pima County Superior Court for post-conviction relief ("PCR"). (Doc. 9 Ex. M). Appointed counsel filed the Rule 32 Petition on September 24, 2009, raising two claims of ineffective assistance of trial counsel. (Doc. 9 Ex. O). Petitioner alleged that trial counsel was ineffective for failing to interview the state's expert witness and was further ineffective for failing to conduct any pretrial interviews. *Id.*

The trial court denied PCR on December 7, 2009. (Doc. 9 Ex. R). Petitioner filed a petition for review with the Arizona COA, and on April 27, 2010 the COA issued its decision granting review and denying relief. (Doc. 9 Ex. S). Petitioner did not file a petition for review in the Arizona Supreme Court. (Doc. 9 Ex. T).

### C. Second Petition for Post-Conviction Relief

On August 20, 2010, Petitioner filed a second notice of PCR in Pima County Superior Court. (Doc. 9 Ex. U). Petitioner's notice stated that he was alleging a claim pursuant to Ariz. R. Crim. P. 32.1 (d), (e), (f), (g) or (h), specifically: newly discovered material facts, that his failure to timely file a notice of PCR was not his fault, a significant change in the law, and actual innocence. *Id.* In support of his claim, Petitioner stated that the trial court lacked subject matter jurisdiction to impose his sentence, that facts existed that established by clear and convincing evidence that he was actually innocent, and that he was also raising a claim of fundamental miscarriage of justice. *Id.*

Appointed counsel filed a Rule 32 Petition on January 4, 2012.[2] (Doc. 9 Ex. V). Petitioner cited Ariz. R. Crim. P. 32.1(h) and argued that claims brought in successive

---

[2] While the petition is date-stamped January 4, 2012, it was signed by counsel on December 30, 2011. This discrepancy is not material to the Court's decision in this matter.

- 3 -

PCR petitions are not precluded if the defendant demonstrates by clear and convincing evidence that no reasonable juror would have found the defendant guilty beyond a reasonable doubt. *Id.* Petitioner specifically argued that his conviction on count nine of the indictment should be vacated because there was no evidence that Petitioner threatened F.Q. on the date stated in the indictment. *Id.*

On September 11, 2012, the trial court issued its order summarily dismissing the second PCR petition. (Doc. 9 Ex. X). The court noted that:

> [E]ven though Petitions based on Rule 32.1(h) are exempt from preclusion, when a claim is raised under Rule 32.1(h) in a successive or untimely post-conviction relief proceeding, some other requirements must be met:
>
> the notice of post-conviction relief must set forth the substance of the specific exception and the reasons for not raising the claim in the previous petition or in a timely manner. If the specific exception and meritorious reasons do not appear substantiating the claim and indicating why the claim was not stated in the previous petition or in a timely manner, the notice shall be summarily dismissed.

*Id.* The Court concluded that: "Here, the defendant failed to set forth the substance of the specific exception, and the reasons for failing to raise this claim in his previous Petition. As such, the Petition for Post-Conviction relief is summarily dismissed." *Id.*

Petitioner filed a petition for review with the Arizona COA on January 10, 2013. (Doc. 9 Ex. Y). On July 2, 2013, the COA issued its order granting review and denying relief. (Doc. 9 Ex. Z). Petitioner then filed a petition for review with the Arizona Supreme Court, which denied review. (Doc. 9 Ex. AA).

**D. Habeas Petition**

Petitioner deposited his PWHC in the prison mailing system on November 29, 2013. (Doc. 1). In Ground One, Petitioner claims that he was subject to double jeopardy because there were multiple counts in the duplicitous indictment that resulted in multiple sentences, and that the trial court lacked jurisdiction to impose illegal sentences. In Ground Two, Petitioner alleges his trial counsel was ineffective for failing to object to the illegal sentences, failing to present mitigating evidence, allowing the use of Petitioner's

prior felony convictions, and performing an inadequate investigation. In Ground Three, Petitioner alleges his Rule 32 counsel was ineffective because counsel made little effort to communicate with Petitioner and ignored correspondence from Petitioner. In Ground Four, Petitioner alleges his due process and equal protection rights were violated because he was placed in double jeopardy and was charged for a single offense in multiple counts.

Respondents contend that the PWHC is untimely and that Petitioner has not shown that he is entitled to equitable tolling. (Doc. 9). Respondents further contend that Grounds One and Three of the Petition are not cognizable on federal habeas review, and that Grounds Two and Four of the Petition are unexhausted and procedurally defaulted and that Petitioner has not shown cause and prejudice or a fundamental miscarriage of justice to excuse his default. Respondents thus conclude that the PWHC is not properly before this Court for review.

## II.   STATUTE OF LIMITATIONS

### A.   Timeliness

As a threshold matter, the Court must consider whether Petitioner's PWHC is barred by the statute of limitation. *See White v. Klizkie*, 281 F.3d 920, 921–22 (9th Cir. 2002). The writ of habeas corpus affords relief to persons in custody pursuant to the judgment of a state court in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2241(c)(3), 2254(a). Petitions for habeas corpus are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2244. The AEDPA mandates that a one-year statute of limitations applies to applications for a writ of habeas corpus by a person in state custody. 28 U.S.C. § 2244(d)(1). Section 2244(d)(1) provides that the limitations period shall run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was

>initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1); *Shannon v. Newland*, 410 F.3d 1083 (9th Cir. 2005).

The other subsections being inapplicable here, Petitioner must have filed his habeas petition within one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A); *see also McQuiggin v. Perkins*, ___ U.S. ____, 133 S.Ct. 1924, 1929, 185 L.Ed.2d 1019 (2013). The Ninth Circuit has held that when an Arizona defendant does not file a petition for review in the Arizona Supreme Court on direct review, his "direct appeal was final. . . [on] the date that he allowed his time for seeking review in the [Arizona] Supreme Court to expire." *Hemmerle v. Schriro*, 495 F.3d 1069, 1073–74 (9th Cir. 2007) (holding that conclusion of proceeding on direct review under § 2244(d)(1)(A) occurred on the date that petitioner's ability to seek review in the Arizona Supreme Court elapsed and not when the mandate issued); *Gonzalez v. Thaler*, __ U.S. __, 132 S.Ct. 641, 656 (2012) (For "a state prisoner who does not seek review in a State's highest court, the judgment becomes 'final' under § 2244(d)(1)(A) when the time for seeking such review expires."). In addition, "the period of 'direct review' in 28 U.S.C. § 2244(d)(1)(A) includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition." *Bowen v. Roe*, 188 F.3d 1157, 1158–59 (9th Cir. 1999).

Here, Petitioner was sentenced on December 10, 2007 and timely filed a direct appeal. On October 14, 2008 the Arizona COA vacated Petitioner's conviction and sentence on count four of the indictment and affirmed Petitioner's conviction and sentence on the remaining counts.[3] (Doc. 9 Ex. J). Petitioner had 30 days from that date

---

[3] Respondents incorrectly state that Petitioner's direct appeal concluded on October 4, 2008. (Doc. 9 at 4). However, the court's decision is dated October 14, 2009.

to seek review in the Arizona Supreme Court. *See* Ariz. R. Crim. P. 31.19(a). Petitioner was granted an extension to seek review until January 12, 2009, but did not file a petition with the Arizona Supreme Court. (Doc. 9 Ex. K). However, the State did file a petition for review, which the Supreme Court denied on April 20, 2009. (Doc. 9 Ex. BB). Thus, Petitioner had 90 days from that date to seek a writ of certiorari in the United States Supreme Court. *See Bowen*, 188 F.3d at 1159. Because no petition for certiorari was filed in the United States Supreme Court, Petitioner's judgment became final on July 20, 2009[4] within the meaning of 28 U.S.C. § 2244(d)(1)(A). Thus, absent any tolling, the one-year limitations period would have commenced on July 21, 2009 and expired on July 21, 2010. *See Bowen*, 188 F.3d at 1159 ("when a petitioner fails to seek a writ of certiorari from the United States Supreme Court, the AEDPA's one-year limitations period begins to run on the date the ninety-day period defined by Supreme Court Rule 13 expires.").

**B. Statutory Tolling**

The one-year limitation period under AEDPA is statutorily tolled during the time in "which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); *see also Lott v. Mueller*, 304 F.3d 918, 921 (9th Cir. 2002). An application for State post-conviction relief is "'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). Moreover, if a state court rejects a petitioner's PCR petition as untimely, it cannot be "properly filed" and the petitioner is not entitled to statutory tolling. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

In Arizona, post-conviction review is pending once a notice of post-conviction relief is filed, even though the petition is not filed until later. *Isley v. Arizona Department of Corrections*, 383 F.3d 1054, 1056 (9th Cir. 2004); *see also* Ariz. R. Crim. P. 32.4(a)

---

*See* Doc. 9 Ex. J.

[4] The 90-day period ended on Sunday, July 19, 2009. The next court day was Monday, July 20, 2009. *See* Ariz. R. Crim. P. 1.3(a) (tolling deadlines to the next business day if the last day of the deadline falls on a Saturday, Sunday, or legal holiday).

- 7 -

("A proceeding is commenced by timely filing a notice of post-conviction relief with the court in which the conviction occurred."). An application for state post-conviction relief remains pending until it has achieved final resolution through the state's post-conviction procedure. *Carey v. Saffold*, 536 U.S. 214, 220 (2002). State law determines the conclusion of collateral review and thus, state law also determines the conclusion of statutory tolling under the AEDPA. *See Hemmerle*, 495 F.3d at 1077. "[W]hen the Arizona Court of Appeals grants review of the trial court's decision on a petition for post-conviction relief but denies relief, and the petitioner does not seek further review, the post-conviction proceeding is pending until the date the appellate court issues its mandate." *Wells v. Ryan*, 2015 WL 9918159, at *9 (D. Ariz. Aug. 13, 2015), *report and recommendation adopted by* 2016 WL 319529 (D. Ariz. Jan. 27, 2016) (collecting cases and citing Ariz. R. Crim. P. 31.23 and 32.9(g)); *Ramon v. Ryan*, 2010 WL 3564819, *6 (D. Ariz. July 23, 2010) (same).

Here, Petitioner timely filed his first notice of PCR on May 8, 2009. This PCR notice was properly filed and therefore tolled AEDPA's one-year statute of limitations. On April 27, 2010, the Arizona COA granted review but denied relief. Petitioner did not petition the Arizona Supreme Court for review. Thus, Petitioner's properly filed PCR application remained pending until the Arizona COA issued the mandate concluding its review of that petition on September 13, 2010. (Doc. 9 Ex. T). *See Wells*, 2015 WL 9918159 at *9; *Celaya v. Stewart*, 691 F.Supp.2d 1046, 1055, 1074–1075 (D. Ariz. 2010), *aff'd* 497 Fed.Appx. 744 (9th Cir. 2012); *Ramon*, 2010 WL 3564819, at *6. Petitioner had one year from that date to file his federal habeas petition. Accordingly, absent equitable tolling, the statute of limitations expired on September 13, 2011, making Petitioner's November 29, 2013 PWHC untimely.

Unlike the 2009 notice, Petitioner's second notice of PCR, filed on August 20, 2010, was not "properly filed," and did not statutorily toll the one-year limitations period. "[A]n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings," including "the time limits upon its

delivery . . ." *Artuz*, 531 U.S. at 8. If a petitioner files an application after the generally applicable state time limit, the application may nonetheless be considered "properly filed" if it fits within any exception to that limit. *Pace*, 544 U.S. at 413; *see also Hemmerle*, 495 F.3d at 1074 ("[W]here notice is filed in conformity with the pertinent Arizona statutory provisions and contains a specific prayer for relief . . ., 'it is sufficient to toll the AEDPA statute of limitations.'") (quoting *Isley*, 383 F.3d at 1056). "When a post-conviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2)." *Pace*, 544 U.S. at 414 (internal brackets and quotation marks omitted).

In Arizona, notices for PCR (other than in "of-right" or capital proceedings) "must be filed within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is the later." Ariz. R. Crim. P. 32.4(a). In the event that a notice is not timely filed, Rule 32.2(b) of the Arizona Rules of Criminal Procedure sets forth conditions for filing, which if met, exclude the claims contained in the untimely notice from preclusion. *See Pace*, 544 U.S. at 413–14 (comparing conditions of filing with conditions of relief). This rule may permit an untimely or successive petition if a petitioner can establish that (1) he "is being held in custody after the sentence imposed has expired," (2) "[n]ewly discovered material facts probably exist and such facts probably would have changed the verdict or sentence," (3) his "failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part," (4) "[t]here has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence," or (5) "[t]he defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt." Ariz. R. Crim. P. 32.1(d–h). "[T]he notice of post-conviction relief must set forth the substance of the specific exception and the reasons for not raising the claim in the previous petition or in a timely

manner." Ariz. R. Crim. P. 32.2(b).

In the instant case, Petitioner's second notice for PCR was untimely filed. Petitioner filed his second notice more than two years and eight months after sentencing, well beyond the 90–day limitation period. Likewise, the notice was filed more than one year and three months after the direct appeal mandate, well beyond the 30–day limitation period. Furthermore, the record does not suggest that Petitioner complied with Rule 32.2(b) when he submitted his untimely notice. Petitioner merely stated that he was raising subject matter jurisdiction and a claim of fundamental miscarriage of justice, and although he asserted that "facts exist which establish by clear and convincing evidence that the defendant is actually innocent," Petitioner failed to cite any specific facts or evidence to support his untimely filing. (Doc. 9 Ex. U). Nor did Petitioner explain why he was not at fault for failing to timely file a notice of PCR, what newly discovered facts, if any, would have changed the verdict, or what significant change in law had occurred that would have overturned his conviction or sentence. Therefore, under state law, the second notice for post-conviction relief was untimely and was not "properly filed" for purposes of 28 U.S.C. § 2244(d)(2), and the time period during which Petitioner pursued his untimely petition through the state courts it not subject to statutory tolling. *See Pace*, 544 U.S. at 414.[5]

This conclusion is further supported by the trial court's ruling summarily dismissing the second PCR petition. (Doc. 9 Ex. X). The court concluded that Petitioner

---

[5] The Ninth Circuit "employ[s] a two-part test to determine whether the period between the denial of one petition and the filing of a second petition should be tolled. First, we ask whether the petitioner's subsequent petitions are limited to an elaboration of the facts relating to the claims in the first petition. If the petitions are not related, then the subsequent petition constitutes a new round of collateral attack, and the time between them is not tolled. If the successive petition was attempting to correct deficiencies of a prior petition, however, then the prisoner is still making proper use of state court procedures, and habeas review is still pending. Second, if the successive petition was not timely filed, the period between the petitions is not tolled." *Banjo v. Ayers*, 614 F.3d 964, 968–69 (9th Cir. 2010) (internal quotations and citations omitted) (noting that because the court concluded the petition was untimely under the second prong of *King*, the court "need not determine whether the petition was a continuation of the first or the start of a second round.").

"failed to set forth the substance of the specific exception [under Rule 32.1(h)], and the reasons for failing to raise this claim in his previous Petition. As such, the Petition for Post-Conviction relief is summarily dismissed." *Id.* In so doing, the court necessarily found that the notice was untimely because Petitioner's claims did not satisfy any exception to the time limit for filing. *See* Ariz. R. Crim. P. 32.2(b) ("If the specific exception and meritorious reasons do not appear substantiating the claim and indicating why the claim was not stated in the previous petition or in a timely manner, the notice shall be summarily dismissed."). Accordingly, because the second notice was filed after the time limit, and did not fit within any exceptions to that limit, it was not "properly filed" and does not toll the limitations period under § 2244(d)(2). *See Pace*, 544 U.S. at 414, 417 ("it must be the case that a petition that cannot even be initiated or considered due to the failure to include a timely claim is not 'properly filed.'"); *Trigueros v. Adams*, 658 F.3d 983, 988 (9th Cir. 2011) ("An untimely state petition is not 'properly filed' and does not trigger statutory tolling under AEDPA."); *see also Biggs v. Duncan*, 339 F.3d 1045, 1048 (9th Cir. 2003) (the time between different rounds of collateral review is not tolled because no application is "pending" during that period).

**C. Equitable Tolling**

In certain limited circumstances, AEDPA's one-year filing deadline may be equitably tolled. *Holland v. Florida*, 130 S.Ct. 2549, 2560 (2010). A petitioner is entitled to equitable tolling if he can demonstrate that "'(1) that he has been pursuing his rights diligently and (2) that some extraordinary circumstances stood in his way'" to prevent him from timely filing a petition. *Holland v. Florida*, 130 S.Ct. at 2562 (quoting *Pace*, 544 U.S. at 418); *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir.1999) (generally, equitable tolling may be applied only when "extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time."). Further, a petitioner must establish a "causal connection" between the extraordinary circumstance and his failure to file a timely petition. *See Bryant v. Arizona Attorney General*, 499 F.3d 1056, 1060 (9th Cir. 2007). "'[T]he threshold necessary to trigger equitable tolling [under

AEDPA] is very high, lest the exceptions swallow the rule.'" *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003) (quoting *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002)).

Here, Petitioner has failed to meet his burden. The record before this Court is devoid of any evidence to demonstrate that Petitioner is entitled to equitable tolling. While Petitioner asserts that AEDPA's statute of limitations is tolled while a petitioner is pursuing Rule 32 relief and claims that he timely filed all notices of PCR, as the Court explained above, Petitioner's second notice of PCR was not timely filed and did not toll the statute of limitations. Further, Petitioner does not demonstrate any extraordinary circumstances that prevented him from timely filing his federal habeas petition. Petitioner alleges that ineffective assistance of trial counsel and Rule 32 counsel created an extraordinary set of circumstances that resulted in a failure to properly identify, assemble, and submit claims on direct appeal and PCR, and contends that this excuses any delay in filing the PWHC and absolves Petitioner of any fault for the untimely filing. (Doc. 13). However, while Petitioner alleges he is entitled to equitable tolling because he cannot be held responsible for counsel's failure to protect his constitutional rights, this does not explain why Petitioner failed to timely file his PWHC. And, in any event, Petitioner's pro se status, indigence, limited legal resources, ignorance of the law, or lack of representation during the applicable filing period do not constitute extraordinary circumstances justifying equitable tolling. *See, e.g., Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006); *see also Ford v. Pliler*, 590 F.3d 782, 789 (9th Cir. 2009) ("A petitioner's misunderstanding of accurate information cannot merit relief, as equitable tolling requires a petitioner to show that some extraordinary circumstance[ ] beyond [his] control caused his late petition, and this standard has never been satisfied by a petitioner's confusion or ignorance of the law alone.") (internal quotations and citation omitted) (citing *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009) ("To apply the doctrine in extraordinary circumstances necessarily suggests the doctrine's rarity, and the requirement that extraordinary circumstances stood in his way suggests

that an external force must cause the untimeliness, rather than . . . merely oversight, miscalculation or negligence on the petitioner's part . . . .") (internal quotation marks and brackets omitted)).

Accordingly, the Court finds that Petitioner is not entitled to equitable tolling and the PWHC is untimely.

### III. CONCLUSION

In sum, the statute of limitations began to run on September 13, 2010 and ran uninterrupted until September 13, 2011. Petitioner did not file his federal habeas petition until November 29, 2013, approximately two years and two months after the limitations period expired. Therefore, based on the above analysis, the Court finds that Petitioner's PWHC is barred by the statute of limitations. Accordingly,

**IT IS HEREBY ORDERED** that the Petition (Doc. 1) is denied and dismissed with prejudice. The Clerk shall enter judgment accordingly.

**IT IS FURTHER ORDERED** denying a Certificate of Appealability and leave to proceed in forma pauperis on appeal because the dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable.

Dated this 17th day of November, 2016.

Eric J. Markovich
United States Magistrate Judge